**NOVAR ELECTRONICS CORP., et al., Plaintiffs,**

**v.**

**C. Marshall DANN, Commissioner of Patents and Trademarks, Defendant.**

**Civ. A. No. 76–0091.**

United States District Court, District of Columbia.

June 24, 1976.

George R. Douglas, Jr., Washington, D. C., Frank H. Foster, Columbus, Ohio, for plaintiffs.

Joseph F. Nakamura, Solicitor, R. V. Lupo, Associate Solicitor, U. S. Patent & Trademark Office, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

GESELL, District Judge.

This is a civil action to obtain a patent for an apparatus and method for dealing with burglars. After the Board of Appeals of the United States Patent and Trademark Office affirmed the Patent Examiner's rejection of certain claims as unpatentable under 35 U.S.C. § 103 in view of the prior art, plaintiffs came to this Court for trial *de novo* as provided in 35 U.S.C. § 145.

Plaintiffs seek a patent for a portable compact box-like device containing delicate electronic sound sensors which activate two bright illumination bulbs attached to the device and set off its strident alarm. The device may be plugged into an ordinary light socket. If an intruder attempts entry, the sound immediately activates the lights and alarm in a darkened area being protected. After seven seconds the lights and alarm turn off and the mechanism resets. Any repeated attempt at intrusion after a discrete interval again activates the device. The reach of the light and sound is limited to the area immediately surrounding the would-be intruder and the impact of this process is designed to frighten off the burglar, relying on the instantaneous response to sound and light and the element of surprise. The device is quite effective, perhaps as much as 85 percent, can be used to monitor an area of as much as 10,000 square feet and finds particular utility in small business establishments.

Plaintiffs urge that this apparatus is not obvious when examined by one skilled in the prior burglar alarm art but rather embodies a wholly new concept in that it focuses on deterrence rather than apprehension. Proof was offered attempting to show a long-felt need, commercial success and other secondary factors. The Commissioner of. Patents relies primarily on the prior art determinations made by the Office and questions the sufficiency of plaintiffs' proof in general.

The initial inquiry must, of course, be whether the claimed invention as embodied in plaintiffs' rejected claims 13, 17, 18 and 19 are obvious in the light of the prior art.*

---

* 17. A burglar deterrent comprising:

(a) an electrically powered illumination means for illuminating a region of a building in response to sounds with enough light to aid viewing of objects in said region; and

(b) an electronic timing switch connected to said illumination means and a source of power for automatically switching the current in said illumination means to continuously illuminate said illumination means for a first selected period of time in response to a sufficient sound and for automatically subsequently blocking the current through the illumination means for a second selected period of time.

13. A burglar deterrent according to claim 17 wherein the electronic timing switch comprises:

(a) a first electronic for switching the current in said illumination means, the first electronic switch having a control gate;

(b) a second electronic switch in the gate circuit of the first electronic switch connected to a source of gate current for switching the gate current of said first electronic switch and having a control gate;

(c) a coupling circuit means for coupling an input actuating signal to the gate of said second electronic switch; and

The primary reference is Larrick No. 3,049,-699 issued August, 1962, a patent for a sound-actuated detection and alarm system. This patent provided for a portable alarm device which would detect sound vibrations from glass breaking, sawing, burning, pounding, etc. It discloses a resetting alarm device. The unit can be connected to normal alternating current and was adaptable for various auxiliary and visual signaling devices such as sirens and blinkers. All features of plaintiffs' apparatus except the immediate illumination are disclosed by this reference. The secondary reference is to Sontag Patent 3,475,751 issued October, 1969, a patent covering a remote monitoring and controlling system. This system, when activated by noise, transmitted a signal to remote monitoring locations such as a watchman's office or a police station. The abstract discloses that from the remote location illumination could be activated which would be very effective to make would-be vandals realize their presence had been discovered and flee before inflicting any damage or theft, without the need for dispatching police to the scene on every occasion. In addition to these cited references, the Commissioner called attention to numerous earlier patents covering mechanical burglar alarms which provide devices for sounding an alarm and automatically lighting a light even before the age of electricity. (Defendant's Exhibits 1–7.) Activating a light by sound is not new in the art.

Plaintiffs contend that there is an essential difference between this system and the referenced systems which embody these similar or identical elements. When the more extensive texts describing the referenced systems are viewed in terms of their overall thrust and purpose, it is urged, they embody ideas quite opposite from those that underlie plaintiffs' approach.

The prior art, crowded with numerous patents, is pointed primarily to apprehension. Lights and alarms are essentially designed to alert passersby, police or watchmen. The systems are geared to capture before the intruder can complete entry and depart. Plaintiffs' system, on the other hand, is purely deterrent. Neither the alarm nor the lights are intended to attract others, but only to surprise and scare away, hopefully before intrusion takes place.

While this contrast is an oversimplification, even if fully accepted it does not dispense with the basic issue of obviousness. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965). Plaintiffs rely on *United States v. Adams,* 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1965), and *Trio Process Corporation v. Goldstein's Sons, Inc.,* 461 F.2d 66 (3d Cir. 1972), *cert. denied,* 409 U.S. 997, 93 S.Ct. 319, 34 L.Ed.2d 262 (1972). *Adams* is not in point for there the inventor combined elements well known in the prior art to reach the same result as the prior art even though he ignored and was not discouraged in his efforts by the conventional belief of those skilled in the industry that his approach would be unproductive. Here, on the other hand, plaintiffs' device is a combination of elements already used in the field and in a way recognized in the prior art, and its departure from that art consists solely of defining a somewhat different objective by focusing exclusively on deterrence and disregarding apprehension. And, as will be discussed more fully below, this different orientation has yet to receive general or meaningful acceptance in the industry. For like reasons, *Trio* is equally unhelpful to plaintiffs. When the subject matter of the prior art is viewed as a whole there is nothing to suggest that those skilled therein

(d) a sound transducer connected to the input of said coupling means.

18. A method for deterring intruders comprising;

(a) detecting sound generated by the intruder;

(b) continuously illuminating at least the region in which the sound was generated in response to the sound for a first selected period of time; and

(c) extinguishing the illumination means for a second selected period of time after the expiration of said first selected period of time.

19. A method according to claim 18 also including the step of sounding an audible alarm in said region simultaneously with the illumination of said region.

did not long know there could be a portable device which sensed intrusion sound, triggered an alarm and activated lighting. Plaintiff has de-emphasized apprehension and relied on deterrence but deterrence as well as notification are implicit if not explicit in the cited references.

The Court finds that plaintiffs' device is an aggregation of elements fully disclosed in the prior art and which appear obvious from an examination of the cited references.

It is recognized that secondary considerations may be weighed before reaching the ultimate determination of obviousness. To avoid the possibility of being influenced by the advantage of hindsight, the Court has taken into account factors beyond the parsing of referenced claims of prior patents when, as here, other proof is made available beyond that which was before the Patent Examiner.

Plaintiffs have relied primarily on several secondary factors but the proof is unpersuasive. The prior art focuses on burglar systems which will detect intrusion and facilitate apprehension. (Plaintiffs' Exhibits 5 and 13.) Alarms and lighting are activated to attract the police or signal a watchman or police at a more distant point. These systems have apparently been of limited effectiveness because of many false alarms and delays which occur before law enforcement officers respond. The limited adequacy of these systems has been recognized and improvements sought. This long-standing need is not, however, satisfied by plaintiffs' device which does not relate to apprehension. Indeed, the insurance rating authorities have in spite of forceful urging refused to accept plaintiffs' device as a basis for reducing theft insurance rates although it has been marketed for several years. There is no proof of any long-felt need for a pure deterrent that was not coupled with enhancing prospects of apprehension and satisfying the interest of the police and the insurance rating organizations in this aspect of burglar protection.

Plaintiffs also point to imitation and commercial success. (Plaintiffs' Exhibit 7.) It was shown that imitators have, in effect, copied plaintiffs' device and even their sales literature. These concerns are not established in the burglar alarm field but are mere opportunists who hoped to benefit from plaintiffs' efforts. They were not shown to have had any appreciable commercial success. While they have copied representations in Novar's sales literature that the device is a "new concept" or "revolutionary break-through," this reflects no market evaluation, only plagiarism. As far as Novar's own sales are concerned, it began marketing in February, 1971, and first broke even in the latter part of 1974. Its total sales of about 37,000 units cannot be measured against any market percentage, nor does the proof reflect to what extent these sales replaced or only supplemented the existing art, if at all.

Thus the apparent obviousness found on examination of the prior art is not shown to be counteracted by secondary factors. Plaintiffs' device is gaining recognition and has practical application, but novelty and utility are not enough. The device is merely a mechanical combination of known elements contributing nothing to the advancement of science and the useful art. It was obvious to one with ordinary skill in the art. Plaintiffs are not entitled to receive a patent for all or any part of each of claims No. 13, 17, 18 and 19. The complaint is dismissed.

SO ORDERED.